# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **FRANK M. CAPRIO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 5:20-CV-00987-CLS** |
| | ) | |
| **THE PRUDENTIAL INSURANCE** | ) | |
| **COMPANY OF AMERICA, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Plaintiff, Frank M. Caprio, is an equity partner in the law firm known by the name of "Bradley Arant Boult Cummings LLP" ("**the Bradley firm**"). His First Amended Complaint (doc. no. 23) is based upon the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and seeks payment of long-term disability benefits under group plans sponsored by the Bradley firm between 2014 and the present. His claims are asserted against four defendants:

(*i*)     "The Hartford Life and Accident Insurance Company" — the entity that insured the Bradley firm's employee welfare benefit plan *prior to* January 1, 2019 ("**Hartford**");[1]

---

[1] *See, e.g.*, doc. no. 23 (First Amended Complaint), ¶ 20 ("Hartford is an entity insuring the benefits provided by the Bradley LTD [*Long Term Disability*] Plan *at all relevant times before January 1, 2019*. It labors under a conflict of interest as such benefits are paid out of its assets. Hartford exercises control over payment of benefits and operation of the plan.") (alteration and emphasis supplied); *id*. ¶ 22 ("Hartford is an entity meeting ERISA's definition of a 'party in

(*ii*)    "The Group Long Term Disability Plan for Employees of Bradley Arant Boult

Cummings LLP" — the name of the Bradley firm's employee welfare benefit

plan *prior to* January 1, 2019, when it was insured by Hartford ("**the Hartford**

**Plan**");[2]

(*iii*)    "The Prudential Insurance Company of America" — the entity that has insured

the Bradley firm's employee welfare benefit plan *since* January 1, 2019

("**Prudential**");[3] and,

(*iv*)    "The Bradley Arant Boult Cummings LLP Long Term Disability Plan" — the

name of the Bradley firm's employee welfare benefit plan *since* January 1,

2019, while insured by Prudential ("**the Prudential Plan**").[4]

---

interest' in this case as that term is defined by 29 U.S.C. § 1002(14).")"; *id*. ¶ 30 ("Through and including the date of Caprio's accident and continuing until December 31, 2018, the insurance coverage funding the Plan was provided through Hartford; from January 1, 2019 through the present, the insurance funding the Plan has been provided through Prudential.").

[2] *See, e.g.*, *id*. ¶ 24 ("Group Long Term Disability Plan for Employees of Bradley Arant Boult Cummings LLP, was the Plan name at all times when Hartford insured the disability benefit at issue."); *id*. ¶ 29, 2d sent. ("The Plan name when Hartford funded and insured the benefit was Group Long Term Disability Plan for Employees of Bradley Arant Boult Cummings LLP.").

[3] *See, e.g.*, *id*. ¶ 14 ("Prudential is an entity insuring the benefits provided by the Bradley LTD Plan *beginning January 1, 2019*. Prudential labors under a conflict of interest as such benefits are paid out of its assets. Prudential exercises control over payment of benefits and operation of the plan.") (emphasis supplied); *id*. at ¶ 16 ("Prudential is an entity meeting ERISA's definition of a 'party in interest' in this case as that term is defined by 29 U.S.C. § 1002(14)."); *id*. ¶ 30 ("Through and including the date of Caprio's accident and continuing until December 31, 2018, the insurance coverage funding the Plan was provided through Hartford; from January 1, 2019 through the present, the insurance funding the Plan has been provided through Prudential.").

[4] *See, e.g.*, *id*. ¶ 26 ("Bradley Arant Boult Cummings LLP Long Term Disability Insurance Plan was the Plan name at all times when Prudential insured the disability benefit at issue."); *id*. ¶ 29, 3rd sent. ("The Plan name when Prudential funded and insured the benefit was Bradley Arant

The case presently is before the court on the motion to dismiss filed by the Hartford Plan and the Prudential Plan.[5]  Those parties contend that plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted against them.  Upon consideration of the pleadings, briefs,[6] and oral arguments of counsel, the court enters the following memorandum of opinion.

## I.  STANDARDS FOR DECISION

The relevant portion of Federal Rule of Civil Procedure 12 permits a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  That rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While that

---

Boult Cummings LLP Long Term Disability Insurance Plan.").

[5] *See* doc. no. 26 (Motion to Dismiss).  The first paragraph of that pleading reads as follows:

> Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, **Defendants**, *The Group Long Term Disability Plan for Employees of Bradley Arant Boult Cummings LLP* [*i.e.*, "**the Hartford Plan**":  *see supra* note 2 and accompanying text] **and** *The Bradley Arant Boult Cummings LLP Long Term Disability Plan* [*i.e.*, "**the Prudential Plan**":  *see supra* note 4 and accompanying text] (**hereinafter collectively referred to as "Bradley"**), move the Court to dismiss the First Amended Complaint (Doc. 23) against them for failure to state a claim upon which relief can be granted.  . . .

Doc. no. 26 (Motion to Dismiss), at 1 (boldface, italics, and bracketed alterations supplied).  Defense counsel's collective description of the moving parties as "Bradley" is, at best, confusing.

[6] Doc. no. 23 (First Amended Complaint); doc. no. 26 (Motion to Dismiss); doc. no. 28 (Response in Opposition to Motion to Dismiss); doc. no. 29 (Reply in Support of Motion to Dismiss).

pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-

defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (citations omitted).  As the Supreme Court stated in *Iqbal*:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  [*Twombly*, 550 U.S. at 555].  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.
>
> To survive a motion to dismiss [founded upon Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face."  *Id.* at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Ibid.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (brackets omitted).
>
> Two working principles underlie our decision in *Twombly*.  *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  *Id.* at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of

4

discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157-58. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.*

*Iqbal*, 556 U.S. at 678-79 (emphasis supplied, second and fourth alterations in original, all other alterations supplied).

## II. PLAINTIFF'S ALLEGATIONS

The Bradley firm has, for many years, offered a long-term disability benefit plan as an option for its employees.[7] Caprio participated in the group plan as an equity partner, and contributed to the premiums in order to be insured against the untoward eventuality that he might suffer physical or cognitive impairments that resulted in a diminution of his earnings.[8]

---

[7] *See* doc. no. 23 (First Amended Complaint), ¶¶ 29-30.

[8] *See id.* ¶¶ 44-45.

5

In January of 2014, at the height of his earning power, Caprio was involved in an automobile accident in which he suffered severe head trauma and lost consciousness.[9]  Those injuries led to sustained double vision, headaches, and noise or ringing in the ears (tinnitus), all of which remain a problem for Caprio.[10]  He has been examined by a number of medical professionals since the accident, and all have consistently concluded that he is at least partially disabled, and unable to work as productively as he could before his accident and resulting injuries.[11]

Following the accident, Caprio sought and received benefits through the group policy for long-term disability benefits then provided by the Bradley firm: *i.e.*, the Hartford Plan.[12]  Caprio was found to meet the Hartford Plan's definition of "partially disabled"[13] and, while working a reduced schedule due to his disability and decreased productivity, received benefits in calendar years 2014, 2015, 2016, 2017, and 2018.[14]

Over time, the premiums for the Hartford Plan became non-competitive and, during the Summer of 2018, the Bradley firm engaged a firm or entity named Willis

---

[9] *See id.* ¶¶ 38-39.

[10] *See id.* ¶ 39.

[11] *See id.* ¶ 40-41.

[12] *See supra* notes 1 and 2 and accompanying text.

[13] *See, e.g.*, doc. no. 23 (First Amended Complaint), ¶ 34 (quoting the Hartford Plan's definition of "disability").

[14] *See id.* ¶ 46.

Towers Watson ("**Willis**")[15] to look for other insurers to fund its long-term disability plan.[16]   The Bradley firm took into consideration Caprio's participation in the Hartford Plan, and sought to avoid prejudice to his preexisting disability claims and benefit payments.[17]

During negotiations to fund the plan, Prudential expressly represented that any participant receiving benefits through the Hartford Plan would have "continuity of coverage," and would experience "no loss or no gain" to that benefit stream.[18] Relying on that representation, and with the advice of Willis, the Bradley firm chose to transfer coverage of its long-term disability plan from Hartford to Prudential, effective as of January 1, 2019.[19]

Hartford learned of the Bradley firm's intent to transfer coverage of its long-term disability plan from Hartford to Prudential around that same time, and Hartford changed the personnel who were responsible for managing Caprio's claim.[20]   In late November 2018, Hartford took the position that it had incorrectly interpreted the terms of its own Plan since the beginning of Caprio's claim, and contended that it

---

[15] Willis Tower Watson describes itself on the internet as, among other things, an insurance brokerage and advisory firm.

[16] *See* doc. no. 23 (First Amended Complaint), ¶ 47.

[17] *See id.*

[18] *See id.* ¶ 48.

[19] *See id.* ¶ 49.

[20] *See id.* ¶ 50.  It appears that plaintiff contends the two events are connected.

should have employed a year-to-year cumulative analysis, rather than the month-to-month analysis it had used continuously for the five preceding years, since the claim opened in 2014.[21]  Hartford then sought reimbursement from Caprio of the benefits it previously had paid to him in accordance with its prior interpretation of the terms of its own Plan.[22]

Caprio appealed that decision by letter dated April 25, 2019.[23]  Hartford answered Caprio's appeal less than two weeks later, on May 7, 2019,[24] and rescinded that part of its decision which required Caprio to reimburse all of the benefits previously paid to him, and reverted to month-to-month payment calculations.[25]

Even so, Hartford again denied Caprio benefits on June 22, 2019, when it determined that, because Caprio's earnings in the months of November and December 2018 had exceeded the definition of "partial disability" (*i.e.*, 80% of prior earnings),[26] he was categorized as having a "Recurrent Disability" status for those two months.[27]

---

[21] *See id.* ¶ 51.

[22] *See* doc. no. 23 (First Amended Complaint), ¶ 51.

[23] *See id.* ¶ 52 ("Caprio appealed that offset decision by letter dated April 25, 2019[,] and raised several concerns, one of which was that Hartford could not change the calculation for determining benefits after so many years of interpreting the benefit calculation another way.  He also asserted that[,] regardless of the methodology[,] Hartford was due to continue to pay benefits.") (alternations supplied).

[24] *See id.* ¶ 56.

[25] *See id.* ¶ 57.

[26] *See id*. ¶ 34.

[27] *See id*. ¶ 60.

In order to calculate that level of earnings, Hartford counted earnings received in November and December of 2018, regardless of when those fees were actually earned.[28]  Caprio alleges that Hartford knew that billing receipts typically increased toward the end of the year, and used that fact to take advantage of the change in plan insurers from Hartford to Prudential on January 1, 2019, to deny his claim.[29]  Hartford relied on the provision stating that those with a "Recurrent Disability" only remained qualified "provided The Policy remains in force" to deny Caprio's claim, because the Hartford Plan was no longer in force after December 31, 2018:  the last date on which the insurance coverage funding the Hartford Plan was provided through Hartford.[30]

Caprio appealed that new termination of his claim in June of 2019, but Hartford did not change its decision, and refused to produce documents related to its decision.[31]  A few months later, on October 9, 2019, Caprio lodged a brief appeal of Hartford's decision, in order to preserve the remedies available to him under 29 U.S.C. § 1132(a).[32]

In the meantime, Caprio also made a claim under the new Prudential Plan that

---

[28] *See* doc. no. 23 (First Amended Complaint), ¶ 60.

[29] *See id.* ¶ 61.

[30] *Id.* ¶ 62 ; *see also id*. ¶ 30 ("Through and including the date of Caprio's accident and continuing until December 31, 2018, the insurance coverage funding the Plan was provided through Hartford; from January 1, 2019 through the present, the insurance funding the Plan has been provided through Prudential.").

[31] *See id.* ¶ 64.

[32] *See id.* ¶ 70.

9

had taken effect on January 1, 2019.[33]  Despite Prudential's representation that there would be continuity of coverage, it also refused to pay Caprio's claim.[34]  In a letter dated November 5, 2019, Prudential contended that the claim belonged to Hartford and refused to pay.[35]  The denial letter indicated that the decision was based on an internal legal opinion which Caprio sought, but Prudential failed to produce with the claim record.[36]  The explanation Prudential provided was that it was "unable to accept this claim as a recurrent disability," because Caprio's monthly earnings for 2018, when averaged over the twelve months of that calendar year, "never exceeded 80% of [his] Pre-Disability Earnings."[37]  As Caprio explained in his appeal letter dated January 30, 2020, if his earnings never *exceeded* 80% of his pre-disability earnings, then that meant he was disabled for the entire year of 2018.[38]  Caprio alleged that was not the only mistake Prudential made:  *e.g.*, it also misapplied the terms of its own Plan that required a calculation of his average earnings over the previous three months, not twelve.[39]

---

[33] *See id.* ¶ 65.

[34] *See* doc. no. 23 (First Amended Complaint), ¶¶ 65-67 ("Continuity of Coverage - We provide continuity of coverage to employees on a no loss, no gain basis to ensure that employees will not lose coverage solely as a result of a change in carriers.").

[35] *See id.* ¶¶ 68, 71-72.

[36] *See id.* ¶¶ 73-74.

[37] *Id.* ¶ 75 (alteration in original).

[38] *See id.* ¶¶ 77, 80-81.

[39] *See id.* ¶¶ 82-83.

Prudential did not render a decision on Caprio's appeal within the time permitted under the Prudential Plan and U.S. Department of Labor Regulations, but instead allowed it to be deemed exhausted by operation of law on May 8, 2020.[40] Caprio notified Prudential of the missed deadline, and requested his claim file.[41] Rather than producing Caprio's claim file, however, Prudential rushed a letter dated May 20, 2020, addressing the merits of his appeal.[42]  Caprio then chose to pursue this action under 29 U.S.C. § 1132(a).[43]

### III.  DISCUSSION

The moving defendants — the Hartford and Prudential Plans[44] — contend that they are not proper parties because they did not have "decisional control" over plaintiff's claims.[45]  Indeed, Caprio alleges that "all [claim] decisions were made by Prudential and Hartford."[46]  The Hartford and Prudential Plans argue that the only proper defendants in an ERISA benefits case such as this one are those entities which administer claims, make decisions about a claimant's eligibility for benefits, and pay

---

[40] *See* doc. no. 23 (First Amended Complaint), ¶ 95.

[41] *See id.*

[42] *See id.* ¶ 96.

[43] *See id.* ¶¶ 101, 111.

[44] *See supra* notes 2, 4, 5 and accompanying text.

[45] *See* doc. no. 26 (Motion to Dismiss), at 5-8.

[46] Doc. no. 23 (First Amended Complaint), ¶ 28 (alteration supplied); *see also* notes 1 and 3, *supra*, and accompanying text.

those benefits. *See Hunt v. Hawthorne Associates, Inc.*, 119 F.3d 888, 908 (11th Cir. 1997) ("We therefore reject the notion that an injunctive order to pay benefits under section 502(a)(1)(B) of ERISA [*i.e.*, 29 U.S.C. § 1132(a)(1)(B)[47]] can issue solely against an ERISA plan as an entity.") (alteration supplied);[48] *Garren v. John Hancock Mutual Life Insurance Co.*, 114 F.3d 186, 187 (11th Cir. 1997) ("The proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan."); *Milton v. Life Insurance Co. of North America*, No. CV-12-BE-864-E, 2012 WL 2357800, at *1 (N.D. Ala. June 20, 2012) (Bowdre, J.) (granting the plan's motion to dismiss and finding that, "[a]s the party with decisional control over the Plaintiff's benefits claim, [the insurer] is the *only* proper defendant in an action concerning ERISA benefits") (alteration and emphasis supplied); *Woodruff v. Blue Cross and Blue Shield of Alabama*, No. 2:16-cv-00281-SGC, 2018 WL 571933, at *5 (N.D. Ala. Jan. 26, 2018) (Cornelius, Mag. J.) (dismissing claims against the ERISA Plan because the insurer "had sole authority to determine

---

[47] 29 U.S.C. § 1132(a)(1)(B) provides that: "(a) A civil action may be brought — (1) by a participant or beneficiary — . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

[48] Note well, however, that the wording of this extract from the *Hunt* opinion says *nothing* about whether "an injunctive order to pay benefits under" 29 U.S.C. § 1132(a)(1)(B) can issue against *both* the entities that insured the Bradley firm's employee welfare benefit plans (*i.e.*, Hartford and Prudential), *as well as* the ERISA plans promulgated by those insuring entities (*i.e.*, the Hartford and Prudential Plans) as related entities. *See, e.g.*, 29 U.S.C. § 1132(d)(1) ("An employee benefit plan may sue *or be sued* under this subchapter *as an entity*." (emphasis supplied)).

12

eligibility for benefits under the Plan").

The Hartford and Prudential Plans highlight the decision in *Henderson v. Transamerica Occidental Life Insurance Co.*, 120 F. Supp. 2d 1278 (M.D. Ala. 2000) (Albritton, J.), *aff'd sub nom. Henderson v. Transamerica Life*, 263 F.3d 171 (11th Cir. 2001), as instructive in this situation.  In that case, Middle District of Alabama Judge Harold Albritton held that:

> In the absence of binding precedent from either the Supreme Court or the Eleventh Circuit on the specific question, this court concludes that Ralston Purina [the company that employed plaintiff as an account executive from 1987 until June 6, 1997] is not properly joined in this claim because no evidence has been presented which indicates that Ralston Purina exercised any control over Transamerica's decision to deny Plaintiff's claim for benefits.  Absent evidence of some degree of decisional control on the part of Ralston Purina, it is illogical to require it to stand before this court to face a charge of wrongful denial of benefits. . . .

*Henderson*, 120 F. Supp. 2d at 1282 (alteration supplied, citations omitted).  The Eleventh Circuit has since emphasized that the proper party defendant is the party that controls the administration of the plan, because "a court order requiring the payment of benefits under ERISA 'must issue against a party capable of providing the relief requested.'"  *Griffin v. Suntrust Bank, Inc.*, 648 F. App'x 962, 965 (11th Cir. 2016) (quoting *Hunt*, 119 F.3d at 908).

It is clear from plaintiff's complaint that neither the Hartford nor Prudential

Plan possessed decisional authority in determining plaintiff's eligibility for benefits.[49]

All of plaintiff's allegations are directed at Hartford and Prudential — the insurers

that made all claims decisions.[50]  Hartford drafted the Plan documents "used to govern

provision of benefits to participants at all times it insured the provision of benefits."[51]

Hartford terminated plaintiff's claim after finding him to be partially disabled for

several years.[52]  Prudential drafted the Plan documents "used to govern provision of

benefits to participants at all times it insured the provision of benefits,"[53] and refused

to pay plaintiff's claim.[54]  In addition, plaintiff never appealed any of the denials to

the respective Plans; instead, all of his appeals were directed to Hartford and

Prudential.[55]

      Plaintiff argues, nevertheless, that the attorney who drafted the motion to

dismiss on behalf of the Hartford and Prudential Plans mischaracterizes those

defendants and the law.  For example, the first paragraph of defendants' motion to

---

[49] *See generally* doc. no. 23 (First Amended Complaint) (amending the original complaint to include the Plans in the prayer for relief with each of their respective insurers).  *See id.* at 27-28.

[50] *See id.* ¶ 28.

[51] *See id.* ¶ 21.

[52] *See id.* ¶¶ 6-7.

[53] *See id.* ¶ 15.

[54] *See* doc. no. 23 (First Amended Complaint), ¶ 7.

[55] *See id.* ¶¶ 52, 64, 70, 77.

dismiss collectively refers to the Hartford and Prudential Plans as "Bradley."[56]  The supporting memorandum of law incorporated into the motion to dismiss further confuses the matter by stating that "[t]he Defendants include *Bradley*, *the plan sponsor*,"[57] which makes it appear that Caprio sued his employer, the Bradley firm, rather than the long-term disability plans through which he alleges he should be deriving benefits.  Caprio clearly and specifically did *not* sue his employer, because the Bradley firm relinquished all authority to make claim decisions and, thus, did not have any control over the decisions denying his claims.[58]  Rather, Caprio is suing the Hartford and Prudential Plans as entities separate from his employer, the Bradley firm.  He argues that any proper judgment would name both the insurer and the Plan through which it pays benefits.[59]

Counsel for the moving defendants also should note that the ERISA statute expressly authorizes suit against employee benefit plans.  *See* 29 U.S.C. § 1132(d)(1) ("An employee benefit plan may sue *or be sued* under this subchapter *as an entity*." (emphasis supplied)).  The following subsection of the same statutory provision also

---

[56] *See* doc. no. 26 (Motion to Dismiss), at 1; *see also* note 5, *supra* (where this court observed that "[d]efense counsel's collective description of the moving parties as 'Bradley' is, at best, confusing") (alteration supplied).

[57] *See* doc. no. 26 (Motion to Dismiss), at 2 (alteration and emphasis supplied).

[58] *See* doc. no. 28 (Plaintiff's Response in Opposition to Motion to Dismiss), at 10, 14-15.

[59] *See id.* at 11-13.  Plaintiff further emphasizes that it would be nonsensical to require an employee benefit plan — an inanimate object — to have "decisional control."  *See id.* at 8-9.

states that: "Any money judgment under this subchapter against *an employee benefit plan* shall be enforceable only against the plan as an entity and shall not be enforceable against any other person [which conceivably could include the insurance company that underwrites the Plan][60] unless liability against such person is established in his individual capacity under this subchapter." 29 U.S.C. § 1132(d)(2) (emphasis and alteration supplied).

Plaintiff argues that the interpretation of the Eleventh Circuit case law previously cited by counsel for the moving defendants — *i.e.*, counsel for the Hartford Plan and Prudential Plan — would "necessarily mean that Congress was absolutely bonkers in passing" the statute authorizing suit against an employee benefit plan.[61]  Instead, plaintiff argues that the Eleventh Circuit's opinion in *Hunt v. Hawthorne Associates, Inc.*, *supra*, supports his assertion that Hartford, the Hartford Plan, Prudential, and the Prudential Plan are properly sued together.  The *Hunt* decision does *not* hold that an ERISA plan is *never* a proper party defendant.  Instead, it rejects "the notion that an injunctive order to pay benefits under section 502(a)(1)(B) of ERISA [29 U.S.C. § 1132(a)(1)(B)] can issue *solely* against an ERISA plan as an entity."  *Hunt*, 119 F.3d at 908 (emphasis and alteration supplied).

---

[60] *See* 29 U.S.C. § 1002(9) ("The term 'person' means an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization.").

[61] Doc. no. 28 (Response in Opposition to Motion to Dismiss), at 9.

Here, plaintiff does not pursue an injunctive order *solely* against the respective employee benefits plans, but he instead asks the court to assign liability to one or both of the insurers, and the plan through which each respectively pays benefits.[62]

Plaintiff highlights Judge Cox's concurrence and dissent in *Hunt*, in which he disagreed with the panel's conclusion that suit may not be brought *solely* against an ERISA *plan*, and he went on to cite cases in which the court had "allowed actions asserting claims for benefits under ERISA to proceed *solely* against ERISA plans." *Id.* at 916 (Cox, J., dissenting) (emphasis supplied) (citing *Springer v. Wal-Mart Associates' Group Health Plan*, 908 F.2d 897 (11th Cir. 1990); *Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37 (11th Cir. 1989)).

Plaintiff argues that Judge Cox's concurring and dissenting opinion in *Hunt* calls attention to an important rule: one Eleventh Circuit panel decision cannot overrule prior decisions of another panel. *See Gulf Power Co. v. Federal Communications Commission*, 226 F.3d 1220, 1224 (11th Cir. 2000) ("Under our prior panel precedent rule, a panel decision is the law of the circuit unless and until it is overruled by the Supreme Court or the en banc court."); *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) ("The law of this circuit is 'emphatic' that only the Supreme Court or this court sitting en banc can judicially overrule a prior panel

---

[62] See notes 47 and 48, *supra*.

17

decision.") (quoting *Cargill v. Turpin*, 120 F.3d 1366, 1386 (11th Cir. 1997)).

*Hunt*, on its face, does not prohibit suit against an employee benefit plan — as long as any "order enjoining the payment of benefits from an ERISA plan [issues] against a party capable of providing the relief requested"[63] — and it certainly does not overrule prior precedents allowing actions to proceed solely against ERISA plans.[64] The ERISA statute is clear that an employee benefit plan is an appropriate entity for suit, *see* 29 U.S.C. § 1132(d), and nothing in the Eleventh Circuit precedent requires this court to ignore the clear and unequivocal language of that statute.[65]

## IV.  CONCLUSION

Upon consideration of the foregoing, this court concludes that the motion to dismiss filed by the Hartford Plan and Prudential Plan should be denied.  An appropriate Order consistent with this memorandum opinion will be entered contemporaneously herewith.

---

[63] *Hunt v. Hawthorne Associates, Inc.*, 119 F.3d 888, 908 (11th Cir. 1997) (alteration supplied).

[64] *Id.* at 916 (Cox, J., dissenting) (citing *Springer v. Wal-Mart Associates' Group Health Plan*, 908 F.2d 897 (11th Cir. 1990); *Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37 (11th Cir. 1989)).

[65] The Hartford and Prudential Plans urge the court not to "create a split" within the Northern District of Alabama by ignoring *Milton v. Life Insurance Co. of North America*, No. CV-12-BE-864-E, 2012 WL 2357800 (N.D. Ala. June 20, 2012).  *See* doc. no. 29 (Reply in Support of Motion to Dismiss), at 6.  The *Milton* court held that the *only* proper defendant was the insurer because it was "the sole party handling claims and making claims decisions."  *Milton*, 2012 WL 2357800, at *4. That opinion is not binding precedent, and this court is not persuaded that it should follow its lead.

**DONE** this 25th day of November, 2020.

_____
Senior United States District Judge